IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 112,131

VIVIAN L. MUNDY,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

SYLLABUS BY THE COURT

1.

A Kansas court obtains jurisdiction over a K.S.A. 2016 Supp. 60-1507 motion if it is filed while a movant is in custody, and jurisdiction is not lost if the movant's custody ends before judgment on the motion becomes final.

2.

Courts do not dismiss an action as moot unless it is clearly and convincingly shown the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and the judgment would not impact any of the parties' rights.

3.

A notice of appeal stating that the appeal is being taken from the decisions of the trial court is sufficiently broad to give an appellate court jurisdiction to hear a claim that counsel appointed to handle a proceeding under K.S.A. 2016 Supp. 60-1507 was ineffective, even when the claim is raised for the first time on appeal.

1

4.

A district court must appoint counsel after determining a K.S.A. 2016 Supp. 60-1507 motion presents a substantial question of law or a triable issue of fact and has discretion to appoint counsel if the motion presents a potentially substantial issue of law or a triable issue of fact. Once appointed, 60-1507 counsel has a duty to provide effective representation.

5.

Under the circumstances of this case, where the record indicates appointed counsel did little to pursue a motion under K.S.A. 2016 Supp. 60-1507 that had been filed pro se, but also indicates counsel did not merely stand by and may have made a strategic decision to do no more, an appellate court may not determine from the record that appointed counsel was either effective or ineffective.

6.

In all but the most exceptional cases, an advocate must perform some sort of independent inquiry and investigation, apart from reading the record, before requesting a remand under *State v. Van Cleave*, 239 Kan. 117, 120-21, 716 P.2d 580 (1986).

7.

When considering a motion under K.S.A. 2016 Supp. 60-1507, a district court has three procedural avenues. First, it may determine that the motion, files, and records of the case conclusively show that the movant is entitled to no relief, in which case it will summarily deny the motion. Second, the court may determine from the motion, files, and record that a substantial issue or issues are presented, requiring a full evidentiary hearing with the presence of the movant. Third, the court may determine that a potentially substantial issue or issues of fact are raised in the motion, supported by the files and record, and hold a preliminary hearing after appointment of counsel to determine whether

2

in fact the issues in the motion are substantial. A court may use its discretion to begin down one avenue before electing a final route. Hence, a motion may be summarily denied even after counsel has been appointed and the motion has been set for hearing.

8. Courts liberally construe pro se pleadings. Nevertheless, after filing a motion under K.S.A 2016 Supp. 60-1507, a pro se movant still bears the burden to allege facts sufficient to warrant a hearing on the motion, and mere conclusions of the defendant or movant are not sufficient to raise a substantial issue of fact when no factual basis is alleged or appears from the record.

Review of the judgment of the Court of Appeals in an unpublished opinion filed September 18, 2015. Appeal from Lyon District Court; W. LEE FOWLER, judge. Opinion filed January 19, 2018. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Kristen B. Patty*, of Wichita, argued the cause and was on the brief for appellant.

*Jon S. Simpson*, assistant solicitor general, argued the cause, and *Stefani K. Hepford,* assistant attorney general, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: Under K.S.A. 2016 Supp. 60-1507, only "[a] prisoner in custody under sentence of a court of general jurisdiction" may file a motion under the statute. Given that requirement, may a Kansas court adjudicate a 60-1507 motion after a defendant's term of probation has expired and the defendant has been released from physical custody? As a matter of first impression for this court, we conclude the answer is that a court may proceed with hearing the motion.

3

Often, under those circumstances, the movant's issues may become moot. Mootness is not a concern in this case, however, because an unpaid order of restitution issued as a consequence of the movant's convictions could be vacated if relief is granted. Consequently, we consider the issues raised by Vivian Mundy's 60-1507 motion and her petition for review, which seeks review of the Court of Appeals decision in *Mundy v. State*, No. 112,131, 2015 WL 5458546 (Kan. App. 2015) (unpublished opinion).

In broad terms, those issues relate to arguments Mundy either (1) raises for the first time on appeal regarding whether her 60-1507 counsel was ineffective or (2) raises in her 60-1507 motion regarding whether her trial counsel was ineffective. More specifically, we first determine, contrary to the Court of Appeals, that Mundy's notice of appeal was worded in a manner that allowed appellate jurisdiction over the issue of whether Mundy's 60-1507 counsel was ineffective. Nevertheless, we are unable to resolve Mundy's claim that 60-1507 counsel was ineffective because the record is insufficient to resolve the factual questions and yet she has not requested a remand as allowed by *State v. Van Cleave*, 239 Kan. 117, 120-21, 716 P.2d 580 (1986), in order to flesh out the merits of her claims. As to Mundy's claims about her trial counsel's ineffectiveness, we hold the district court did not use an improper procedure in handling her motion and the district court did not err in summarily denying the motion.

Accordingly, even though we disagree with the Court of Appeals on one point, we affirm the Court of Appeals and the district court.

FACTS AND PROCEDURAL HISTORY

The facts of Mundy's criminal case are tangential to her current appeal from her 60-1507 motion but nevertheless help explain her arguments. Mundy was a licensed, master's level social worker who enrolled as a Medicaid provider in 2003. She primarily

4

provided behavioral and cognitive therapy to individuals with traumatic brain injuries. In 2007, after reviewing Mundy's billings, the fiscal agent for Kansas' Medicaid program referred Mundy to the Attorney General's office for possible fraud investigation.

After investigation, the State charged Mundy with six counts of making a false claim to the Medicaid program, in violation of K.S.A. 21-3846(a)(1); one count of obstructing a Medicaid fraud investigation, in violation of K.S.A. 21-3856(a)(1); and one count of concealment of records, in violation of K.S.A. 21-3849. The State alleged Mundy caused Medicaid to pay more than $207,000 for services she did not actually provide.

At trial, a data analyst explained the problems with Mundy's records that had been identified through audit proceedings. These problems included lack of documentation, alterations to documents, overbilled units, instances where Mundy claimed to have been providing therapy in two different places at the same time, instances where Mundy claimed to have provided therapy at a time when another service provider had billed for therapy, and occasions where Mundy was shopping when she claimed to have been providing services. Mundy's defense was that she was terrible with paperwork but did not intend to defraud the State—she offered evidence, for example, that on some occasions she underbilled or failed to bill for some of her services and in one case had failed to cash a check from Medicaid.

The jury found Mundy guilty of five counts of making a false claim to the Medicaid program and one count of obstructing a Medicaid fraud investigation. Mundy was sentenced to a total of 18 months' imprisonment, but the district court suspended execution of the term of imprisonment and placed Mundy on community corrections probation for 24 months with a 12-month postrelease period. The district court later ordered Mundy to pay $103,231.88 in restitution to the Kansas Medicaid Program, plus

$54,792.25 to the Attorney General's Medicaid Fraud and Abuse Division for reasonable investigative and prosecution expenses.

Mundy appealed, raising four issues, all of which were rejected by the Court of Appeals except one: The Court of Appeals agreed that three of Mundy's five convictions for making a false claim were multiplicitous. *State v. Mundy*, No. 104,958, 2012 WL 2045298 (Kan. App. 2012) (unpublished opinion), *rev. denied* 296 Kan. 1134 (2013). The Court of Appeals therefore reversed the erroneous convictions, vacated the corresponding sentences, and otherwise affirmed the district court. 2012 WL 2045298, at *9, 11.

Mundy thereafter filed a pro se motion under 60-1507 and raised two claims: "Failure of Counsel to represent adequately"; and "Coercion by the State to get witnesses to testify." Only her first claim, ineffective assistance of trial counsel, is before us. As to that claim, Mundy's motion listed eight complaints about her retained trial counsel.

The district court appointed a different attorney to represent Mundy on her 60-1507 claims. The record indicates a hearing on Mundy's motion was originally scheduled, although it was cancelled the next day due to "parties negotiating." About a month later, the State filed its response in opposition to Mundy's 60-1507 motion. The State urged the district court to dismiss Mundy's motion for failure to comply with court rules, and in the alternative to summarily deny Mundy's motion because she made only conclusory contentions and identified no evidentiary basis in support of her claims.

The district court, when issuing its ruling, reorganized and consolidated Mundy's claims as follows:

6

"A.      Trial counsel was ineffective in representing petitioner in that he failed to subpoena all of the witnesses because he was sure the judge would give him more time and a continuance.

"B.      Trial counsel was ineffective in representing petitioner in that he did not interview all the witnesses. He would not interview or subpoena witnesses requested by petitioner as he did not feel head trauma cases would make good witnesses.

"C.      Trial counsel was ineffective in representing petitioner in that he was preoccupied with another case he had taken, gave work to a person in his office that was not an attorney, and would not give back his retainer so she could hire another attorney.

"D.      Trial counsel received legal advice from a friend of petitioner."

Addressing those claims, the district court first stated it was "clear from the record that [trial counsel] subpoenaed numerous witnesses prior to trial and that several of those witnesses testified at the trial." Mundy's pleadings gave "[n]o information . . . stating the names of additional witnesses desired to be called or the substance of their testimony," and "[w]ithout specific names and facts" the district court was "not in a position to go forward to hearing." Second, the district court determined Mundy's motion failed to identify which witnesses trial counsel allegedly did not interview, nor did it identify what relevant evidence those witnesses possessed. "The lack of facts presented by [Mundy] . . . does not overcome the presumption that [trial counsel] used reasonable professional judgment in his preparation and investigation of the case." As for declining to use head trauma patients as witnesses, the district court concluded trial counsel exercised reasonable professional judgment. Third, Mundy had made only "naked allegations" that trial counsel was ineffective by being preoccupied with another case, by giving work to a nonattorney within his office, or by refusing to return Mundy's retainer.

7

And fourth, the court concluded a bare allegation that an unidentified friend gave some unidentified sort of legal advice to trial counsel was a meritless claim.

In summary, the district court ruled that Mundy had failed to show trial counsel's representation fell below an objective standard of reasonableness, and she had also "failed to plead facts sufficient to allow [the district court] to proceed to an evidentiary hearing." Accordingly, the district court summarily denied Mundy's 60-1507 motion.

Mundy's 60-1507 counsel filed a notice of appeal, and a third attorney was ultimately appointed to pursue that appeal. In briefs before the Court of Appeals, Mundy first argued her release from probation did not deprive courts of jurisdiction. She then raised three issues regarding the substance of her claims. As to 60-1507 counsel, she asserted he had done "absolutely nothing" other than file a notice of appeal, a performance which "failed to meet 'the most minimal of standards'" and constituted ineffective assistance. As to her claims of ineffective assistance of trial counsel, Mundy argued she was deprived of due process when the district court denied her motion without following one of the three procedural options outlined in *Lujan v. State*, 270 Kan. 163, 14 P.3d 424 (2000). Finally, she contended her 60-1507 motion, when liberally construed, entitled her to an evidentiary hearing.

The Court of Appeals agreed with Mundy that her release from probation did not deprive either the district court or the Court of Appeals of jurisdiction. Nevertheless, it concluded it lacked jurisdiction to even consider whether Mundy's 60-1507 counsel was ineffective because the issue was not included in the notice of appeal. *Mundy*, 2015 WL 5458546, at *2-3. The Court of Appeals rejected Mundy's other arguments and affirmed the district court's summary denial of her 60-1507 motion. *Mundy*, 2015 WL 5458546, at *3-6.

We thereafter granted Mundy's petition for review. See K.S.A. 60-2101(b) (this court has jurisdiction to correct, modify, vacate, or reverse any act, order, or judgment of the Court of Appeals).

ANALYSIS

1. *We have jurisdiction over Mundy's appeal, even though she has been released from probation.*

Even though no party asks us to review the Court of Appeals determination that Mundy's release from probation does not affect jurisdiction over her 60-1507 motion, we raise the issue because we have a duty to question jurisdiction on our own initiative. *State v. McCoin*, 278 Kan. 465, 467, 101 P.3d 1204 (2004); see also *State v. Elliott*, 281 Kan. 583, 588, 133 P.3d 1253 (2006) (parties cannot "'convey jurisdiction on a court by failing to object to its lack of jurisdiction'" [quoting *Kansas Bd. of Regents v. Skinner*, 267 Kan. 808, 814, 987 P.2d 1096 (1999)]).

The language of K.S.A. 2016 Supp. 60-1507 governs jurisdiction over motions filed under its provisions. See Kan. Const., Art. 3, § 6(b) (district courts have jurisdiction as provided by law); *McCoin*, 278 Kan. at 468 ("If the district court's order was entered without jurisdiction, then an appellate court does not acquire jurisdiction on appeal."). And, as we noted in the opening sentence of this decision, 60-1507(a) grants courts subject matter jurisdiction only when the motion is filed by "[a] prisoner *in custody* under sentence of a court of general jurisdiction." (Emphasis added.) See *Johnson v. State*, 200 Kan. 708, 710, 438 P.2d 96 (1968).

Here, Mundy filed her pro se 60-1507 motion on April 11, 2013, while she was still on probation, and, under our caselaw, being on probation is sufficiently "in custody" to allow her to file a 60-1507 motion. *Miller v. State*, 200 Kan. 700, 704, 438 P.2d 87

9

(1968). But Mundy completed her probation and was discharged from state custody before the district court ruled on her motion, raising the question of whether she could still be granted relief under 60-1507. This court has never decided that question, although the Court of Appeals has, holding relief could be granted. See *Rawlins v. State*, 39 Kan. App. 2d 666, 182 P.3d 1271, *rev. denied* 286 Kan. 1179 (2008).

Settling this jurisdictional issue of first impression for this court requires us to interpret K.S.A. 2016 Supp. 60-1507. When interpreting statutes and when considering issues of jurisdiction, appellate courts exercise unlimited review. *State v. Berreth*, 294 Kan. 98, 109, 273 P.3d 752 (2012).

Applying that standard, we begin with the preliminary question of whether being on probation amounts to "custody." We settled that question in *Miller* by relying on federal caselaw that holds probation places sufficient restrictions on freedom to warrant habeas corpus relief. See *Miller*, 200 Kan. at 704; see also *Johnson*, 200 Kan. at 710 ("[T]he body of federal law developed [under 28 U.S.C. § 2255] should be given great weight in construing the provisions of our statute [60-1507]."); *Easterwood v. State*, 273 Kan. 361, 375, 44 P.3d 1209 (2002) ("[T]he reliance on 28 U.S.C. § 2255 in enacting K.S.A. 60-1507 would appear to require us to give great weight to [a federal decision]."); see also *Vontress v. State*, 299 Kan. 607, 615-16, 325 P.3d 1114 (2014) (discussing *Easterwood* but noting differences between the statutes and considering whether language required a deviation from the federal approach). We see no reason to reexamine *Miller*'s holding in this case.

We have also held, although in a different context, that a prisoner's rights must be determined as of the date the 60-1507 motion is filed. See, e.g., *In re Habeas Corpus Application of Horst*, 270 Kan. 510, 520, 14 P.3d 1162 (2000) ("[W]e must limit our decision to precisely what actions, if any, were being inflicted upon [the habeas movant]

10

*at the time the petition was filed*." [Emphasis added.]); *Kelly v. Kurtz*, 183 Kan. 684, 687, 331 P.2d 327 (1958) ("In habeas corpus proceedings the right of a petitioner to be released from custody depends entirely upon the validity of his restraint on the date of the filing of his petition.").

Applying a similar rule, the United States Supreme Court has held the expiration of a sentence does not terminate federal jurisdiction in habeas cases. See *Carafas v. LaVallee*, 391 U.S. 234, 238-40, 88 S. Ct. 1556, 20 L. Ed. 2d 554 (1968). The Court noted the federal statute did not require a person be in custody when relief was granted, merely when the application is filed. 391 U.S. at 238-39. Likewise, K.S.A. 2016 Supp. 60-1507(a) states "[a] prisoner in custody . . . may . . . move the court which imposed the sentence to vacate, set aside or correct the sentence." It does not impose a custodial requirement related to the court's power to rule on the motion. See K.S.A. 2016 Supp. 60-1507(b). We thus conclude a Kansas court obtains jurisdiction over a 60-1507 motion if a motion is filed while a movant is in custody. Jurisdiction is not lost if a 60-1507 movant's custody ends before judgment on the motion becomes final.

Apart from the question of jurisdiction, a release from custody could render the request for relief made through a 60-1507 motion moot. See *Rawlins*, 39 Kan. App. 2d at 671. "Generally, Kansas appellate courts do not decide moot questions or render advisory opinions." *State v. Montgomery*, 295 Kan. 837, 840, 286 P.3d 866 (2012). We have described mootness as a jurisprudential doctrine or "court policy" recognizing our role to ""determine real controversies relative to the legal rights of persons and properties which are actually involved in the particular case properly brought before it and to adjudicate those rights in such manner that the determination will be operative, final, and conclusive."" 295 Kan. at 840 (quoting *State v. Bennett*, 288 Kan. 86, 89, 200 P.3d 455 [2009]); see also 295 Kan. at 841 ("[T]he mootness doctrine is not a question of jurisdiction.").

11

In the habeas corpus context, if a person has served his or her full sentence and has been released from state custody, courts generally evaluate whether any collateral consequences to the conviction prevent a habeas motion from being moot. See *Maleng v. Cook*, 490 U.S. 488, 491-92, 109 S. Ct. 1923, 104 L. Ed. 2d 540 (1989); *Carafas*, 391 U.S. at 237-38; *Olson v. Hart*, 965 F.2d 940, 943 (10th Cir. 1992) ("Moreover, even if the probationary period has expired by [the time of appeal], a petition for habeas relief is not moot, so long as the petition was filed during the probationary period and the conviction will have adverse collateral consequences."); see also *Rawlins*, 39 Kan. App. 2d at 672-74 (considering *Maleng* and *Carafas* together and explaining that although collateral consequences do not provide courts with jurisdiction over a habeas petition that was filed only after the petitioner's sentence has fully expired, they do prevent a habeas petition that was filed before the sentence fully expired from being moot).

We adopt this standard and, applying it here, decline to dismiss Mundy's appeal as moot. Generally, we do not dismiss an action as moot "unless it is clearly and convincingly shown the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and it would not impact any of the parties' rights." *McAlister v. City of Fairway*, 289 Kan. 391, 400, 212 P.3d 184 (2009). That showing has not been made here. Even after Mundy's release from probation, she faces significant adverse collateral consequences from the judgment against her—namely, the obligation to pay more than $150,000 in restitution and costs. See *Rawlins*, 39 Kan. App. 2d at 669-74.

Accordingly, we see no jurisdictional or prudential impediment that would prevent Kansas courts, including this court, from considering Mundy's 60-1507 motion.

2. *The Court of Appeals erred in concluding it lacked jurisdiction to determine Mundy's ineffective assistance of 60-1507 counsel claim.*

As we noted above, after the Court of Appeals concluded Mundy's release from probation did not deprive the court of appellate jurisdiction, it turned to the question of whether it had jurisdiction over an argument Mundy raised for the first time on appeal: Did the court have jurisdiction over her ineffective assistance of 60-1507 counsel claim? The Court of Appeals concluded it lacked jurisdiction because Mundy had not identified this issue in her notice of appeal. *Mundy*, 2015 WL 5458546, at *3-4. The following additional facts aid our discussion.

*Additional Facts*

Mundy's notice of appeal stated she "appeals the decisions made by the trial court to the Court of Appeals." The Court of Appeals acknowledged this was "a very broad statement that she is appealing the decision of the trial court," but it then concluded the issue of 60-1507 counsel's ineffectiveness could not have been bundled into that broad statement because it was an issue being raised for the first time on appeal. *Mundy*, 2015 WL 5458546, at *4. The Court of Appeals explained: "[E]ven if [it] liberally construed Mundy's notice of appeal, [it] would not have jurisdiction over Mundy's argument that [60-1507 counsel] provided ineffective assistance" because the matter was not part of Mundy's notice of appeal. 2015 WL 5458546, at *4.

Mundy, in her petition for review, noted the irony: She contended 60-1507 counsel had done nothing besides file a notice of appeal, and the Court of Appeals determined even that was defective because it did not identify the issue of counsel's own ineffectiveness. Mundy did not, however, argue that the notice of appeal should be construed to cover her ineffective assistance of 60-1507 counsel argument. Instead, she contended such claims could be properly raised for the first time on appeal if (1) the

13

record was sufficient to allow a determination of the issue or (2) the claim was clearly without merit. At oral arguments, Mundy's appellate counsel reasserted her position that the record was sufficient to demonstrate the ineffectiveness of her 60-1507 counsel, and that we should presume prejudice from this failure.

*Standard of Review and Applicable Law*

As we noted in discussing the first issue regarding our jurisdiction over this 60-1507 action, we have the duty to question jurisdiction and, when doing so, we exercise unlimited review. *Berreth*, 294 Kan. at 109; *McCoin*, 278 Kan. at 467. As applicable to this issue, "jurisdiction in any action on appeal is dependent upon strict compliance with the statutes" for appellate procedure, which are currently set forth in K.S.A. 2016 Supp. 60-2103. *State v. Griffen*, 241 Kan. 68, 70, 734 P.2d 1089 (1987).

Specifically, "[a] notice of appeal is vital to appellate jurisdiction." *Byars v. Dix*, 164 Kan. 303, 188 P.2d 662 (1948). Of relevance here, "[t]he notice of appeal shall specify the parties taking the appeal" and "shall designate the judgment or part thereof appealed from." K.S.A. 2016 Supp. 60-2103(b). Although adherence to 60-2103 is necessary to confer jurisdiction upon the appellate courts, when "there is a valid controversy whether the statutory requirements have been complied with, we are required to construe those statutes liberally to assure justice in every proceeding." *Griffen*, 241 Kan. at 70.

Some history helps explain our past caselaw applying 60-2103. Prior to 1963, Kansas courts "vigorously enforced" the then-requirement that parties file a notice of appeal as well as an abstract specifying exact errors subject to the appeal. *State v. Boyd*, 268 Kan. 600, 602-04, 999 P.2d 265 (2000). In 1963, the legislature enacted 60-2103 with the purpose of making it "easier to take an appeal," and since its enactment this court

14

has explained "[t]here is no statute or court rule which expressly requires an appellant to set forth all of the errors that will be contested on appeal in the notice of appeal." *Boyd*, 268 Kan. at 604; see L. 1963, ch. 303, 60-2103; see also *Hess v. St. Francis Regional Med. Center*, 254 Kan. 715, 720, 869 P.2d 598 (1994) ("The code of civil procedure was not rewritten to make more technical and burdensome the requirements of the notice of appeal as construed by the court in its previous decisions.").

It is still, of course, "a fundamental proposition of Kansas appellate procedure that an appellate court only obtains jurisdiction over the rulings identified in the notice of appeal." *Hess*, 254 Kan. at 718. But "[t]he current rules [of appellate procedure] do not require a party to specify the errors complained of," but rather to designate the judgment or part thereof appealed from. *State v. Ransom*, 268 Kan. 653, 655, 999 P.2d 272 (2000).

In determining how well a party has "identified" or "specified" the ruling complained of, we often consider whether the opposing party was able to discern and prepare for arguments on appeal. See *State v. Wilkins*, 269 Kan. 256, 270, 7 P.3d 252 (2000) (State did not show surprise or prejudice); *Hess*, 254 Kan. at 720 ("appellee does not claim that it was surprised or placed at a disadvantage"); *Griffen*, 241 Kan. at 70 (State not misled, surprised, or prejudiced by notice of appeal); cf. *Boyd*, 268 Kan. at 606 (explaining the notice of appeal "is not a device to alert the parties to all possible arguments on appeal"—"[t]hat is the purpose and function of the docketing statements and briefs filed by the parties"). This is in keeping with our efforts to "[use] a liberal construction to secure the just, speedy, and inexpensive determination of every action or proceeding required by the code of civil procedure." *Hess*, 254 Kan. at 720.

There remains, however, "a substantive minimum below which a notice cannot fall and still support jurisdiction." *State v. Laurel*, 299 Kan. 668, 673, 325 P.3d 1154 (2014). In *State v. Walker*, 260 Kan. 803, 805-07, 926 P.2d 218 (1996), for example, this court

acknowledged the defendant's briefed issue "does not share precise identity with the ruling designated in the notice of appeal"—but the *subject* of the defendant's appeal was nonetheless "quite apparent" from the notice. 260 Kan. at 805 (appeal from an order overruling motion to modify order revoking probation conferred jurisdiction over actual revocation proceedings as well); see *Wilkins*, 269 Kan. at 268-69 (appeal from "the 'judgment of sentence'" sufficiently encompasses substantive trial issues a defendant wished to raise on appeal); *Ransom*, 268 Kan. at 654-56 (finding that a notice of appeal "'from the judgment and sentence of the district court,'" even one that provided only the date of the sentencing hearing, provided jurisdiction over trial issues as well); *Boyd*, 268 Kan. at 602-07 (finding that an appeal "from [the] conviction" conferred jurisdiction over procedural or evidentiary issues). But see *State v. Coman*, 294 Kan. 84, 90, 273 P.3d 701 (2012) (a notice of appeal from a sentence cannot be construed to include an appeal from a conviction); *State v. G.W.A.*, 258 Kan. 703, 707, 906 P.2d 657 (1995) (declining to perform "independent research and read the record" in order to divine that the State was seeking to appeal a question reserved as opposed to an appeal from an acquittal).

*Analysis*

At the outset, we note it would have been evidently erroneous for the Court of Appeals to have concluded it lacked jurisdiction to consider the issue of ineffective assistance of 60-1507 counsel merely because it was raised for the first time on appeal. See, e.g., *Robertson v. State*, 288 Kan. 217, 227-28, 201 P.3d 691 (2009) (holding challenge to the effectiveness of 60-1507 counsel may be raised for first time on appeal). Instead, the Court of Appeals ruling was a little different: It seems to have concluded that *because* the issue was raised for the first time on appeal, it could not have been a part of the "decisions made by the trial court" from which Mundy appealed and therefore the court lacked jurisdiction under K.S.A. 2016 Supp. 60-2103. *Mundy*, 2015 WL 5458546, at *4. This approach is exactly the type of overly technical, onerous burden K.S.A. 2016

16

Supp. 60-2103 was meant to avoid. See *Hess*, 254 Kan. at 720. Plus, the Court of Appeals' approach effectively takes away the availability of a *Van Cleave* proceeding.

In *Van Cleave*, this court recognized an exception to the general rule that all claims must be raised in the district court: "When appellate counsel in a criminal case desires to raise the issue of ineffective assistance of counsel and that issue has never been ruled upon by the trial court, defendant may seek a remand of the case to the trial court for an initial determination of the issue." *Van Cleave*, 239 Kan. 117, Syl. ¶ 2. Allowing this procedure "avoid[s] the delay and expense of a separate action and a separate appeal." *Van Cleave*, 239 Kan. at 119-20. And in *Robertson*, 288 Kan. at 227, we recognized the availability of *Van Cleave* proceedings in cases where ineffective assistance of 60-1507 counsel is raised for the first time on appeal.

The *Van Cleave* court recognized that ineffective assistance of counsel claims would generally arise for the first time on appeal "when new counsel enters the case after trial counsel has argued a motion for new trial and filed a notice of appeal." 239 Kan. at 120. And, in reality, it often arises after the notice of appeal has been filed because the Board of Indigents' Defense Services imposes a duty on trial counsel appointed for indigent or partially indigent defendants to "file a notice of appeal in a timely manner, unless a waiver of the right to appeal has been signed by the defendant." K.A.R. 105-3-9(a)(3).

Given this practicality, the Court of Appeals decision drastically reduces the cases in which a *Van Cleave* proceeding would be available. In essence, the Court of Appeals approach has the effect of limiting review of ineffective assistance of 60-1507 counsel claims to cases where 60-1507 counsel alleged his or her own ineffectiveness in a notice of appeal—an unlikely scenario, and an approach that does not "secure the just, speedy,

17

and inexpensive determination of every action or proceeding required by the code of civil procedure." *Hess*, 254 Kan. at 720.

Further, at least in this case, there is no indication the State was surprised by Mundy's appellate arguments about her 60-1507 counsel's performance: The State never complained, either before the Court of Appeals or before this court, that it was surprised or caught unaware. See *Wilkins*, 269 Kan. at 269-70; *Hess*, 254 Kan. at 720; *Griffen*, 241 Kan. at 70.

We hold that Mundy's notice of appeal was sufficient to cover the substance of the district court's ruling, including the interrelated issue of whether 60-1507 counsel offered ineffective assistance before that tribunal. See *Wilkins*, 269 Kan. at 268-69; *Ransom*, 268 Kan. at 654-55. The Court of Appeals erred in concluding it lacked jurisdiction over Mundy's ineffective assistance of 60-1507 counsel claim.

3. *We cannot resolve Mundy's ineffective assistance of 60-1507 counsel issue from the record and remand is not appropriate; we accordingly do not reach or decide the issue.*

In addition to allowing a remand under *Van Cleave* when issues of ineffective assistance of counsel are raised for the first time on appeal, "as long as the record is sufficient or the claim clearly without merit, an appellate court may consider the quality of the assistance provided by K.S.A. 60-1507 counsel for the first time on appeal." *Robertson*, 288 Kan. at 227-28.

As we will explain more fully, we cannot determine, from the record, whether 60-1507 counsel provided ineffective assistance, and Mundy's claim is not "clearly" without merit. However, because Mundy has at no point requested a *Van Cleave* remand, or any sort of remand for a determination on this issue, we decline to review the claim.

18

3.1. *Mundy was entitled to effective assistance of counsel.*

"The extent of a movant's statutory right to effective assistance of counsel during a K.S.A. 60-1507 proceeding is a question of law over which this court has previously exercised unlimited review." *Robertson*, 288 Kan. at 227. And we have held that, although "there is no constitutional right to effective assistance of legal counsel on collateral attacks because they are civil, not criminal actions," Kansas does under some circumstances "provide a *statutory* right to counsel on collateral attack." *Brown v. State*, 278 Kan. 481, 483, 101 P.3d 1201 (2004).

K.S.A. 22-4506(b) provides a conditional, statutory right to counsel, stating that if the district court "finds that the [60-1507] petition or motion presents substantial questions of law or triable issues of fact and if the petitioner or movant [has been determined indigent], the court shall appoint counsel." Once "counsel is appointed by the court in postconviction matters, the appointment should not be a useless formality." *Brown*, 278 Kan. at 484.

In Mundy's case, the district court appointed counsel without finding her motion presented substantial questions of law or triable issues of fact. See *Albright v. State*, 292 Kan. 193, 196, 251 P.3d 52 (2011). Nevertheless, even if Mundy was not actually statutorily "entitled" to 60-1507 counsel because her motion did not present substantial questions of law or issues of fact, her 60-1507 appointed counsel still had a duty to provide effective representation.

Support for this proposition can be found in *Robertson*, in which this court considered a situation where the district court appointed 60-1507 counsel even though it did not believe there were any issues warranting review. 288 Kan. at 220. We

19

acknowledged the district court had appointed counsel out of an "abundance of caution" and noted it could have summarily denied the underlying motion. Nevertheless, we implicitly recognized the district court had the statutory power to exercise discretion and appoint counsel under these circumstances—that is, where the motion presents a *potentially* substantial question of law or triable issue of fact. Cf. Supreme Court Rule 183(i) (2017 Kan. S. Ct. R. 222) (court *must* appoint counsel if 60-1507 motion presents a substantial question of law or triable issue of fact). "Once this statutory right to counsel attaches, a movant is entitled to effective assistance of counsel. Appointment of counsel in a K.S.A. 60-1507 proceeding should not be a useless formality." 288 Kan. at 228. See 288 Kan. at 220, 229, 232; *Brown*, 278 Kan. at 481

3.2. *It is not clear from the record whether 60-1507 counsel provided ineffective assistance of counsel, and yet Mundy's claim is not entirely without merit.*

Mundy, in order to establish her 60-1507 attorney, once appointed, violated his duty to provide effective assistance of counsel, must establish the same elements as she will have to establish in order to show her trial counsel was ineffective under the constitutional standard established by the Sixth Amendment to the United States Constitution. See *Robertson*, 288 Kan. at 225, 232. This means that to establish ineffective assistance of either 60-1507 counsel or trial counsel, Mundy must show: "'(1) counsel's performance was deficient, which means counsel made errors so serious that counsel's performance was less than that guaranteed by the Sixth Amendment, and (2) the deficient performance prejudiced the defense, which requires showing counsel's errors were so serious they deprived the defendant of a fair trial.'" *Robertson*, 288 Kan. at 225 (quoting *Haddock v. State*, 282 Kan. 475, 512-13, 146 P.3d 187 [2006]); see *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

As to the first prong, "[o]nce appointed," 60-1507 counsel "must, within the stricture of required candor to the court and other ethical rules, pursue relief for the client." *Robertson*, 288 Kan. at 229. While the instruction to "pursue relief" could imply an active advocate role, the *Robertson* court clarified that if pursuing relief "requires counsel to stand silent or merely to submit the case on the written arguments of that client, so be it." 288 Kan. at 229. But counsel is "simply not free to act merely as an objective assistant to the court or to argue against his or her client's position." 288 Kan. at 229.

Here, the record shows only that 60-1507 counsel was appointed to represent Mundy, agreed with the State's request to have more time to respond to Mundy's motion, and filed a notice of appeal. In other words, counsel did little to pursue relief for Mundy. But, on the record before us, neither can we conclude that counsel did "absolutely nothing" as alleged by Mundy.

Under those circumstances, we have trouble categorizing counsel's conduct as clearly effective, as the State suggests, or clearly ineffective, as Mundy suggests. In rejecting the State's position, we recognize some arguable merit, at least facially, to Mundy's claim that her 60-1507 counsel provided ineffective assistance. For example, Mundy's pro se motion was in part dismissed because it insufficiently identified witnesses and facts, and yet 60-1507 counsel never sought to amend Mundy's pro se 60-1507 motion so as to fix the obvious deficiencies. See, e.g., *Thompson v. State*, 293 Kan. 704, 710-13, 270 P.3d 1089 (2011) (although K.S.A. 60-215 does not permit 60-1507 movants to amend their motions as of right, a movant could amend with leave of court and leave should be granted freely when justice requires it).

The State posits several reasons why Mundy's 60-1507 counsel might not have amended the pleading, replied to the State's response, or urged a hearing—possibly a

strategic decision to rely on the court's obligation to liberally construe pro se pleadings. Indeed, strategy may serve as a virtual safe harbor for counsel's decisions because "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable, and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. *Strickland*, 466 U.S. at 690-91." *State v. Gleason*, 277 Kan. 624, 644, 88 P.3d 218 (2004). And ultimately, Mundy bears the burden of demonstrating that counsel's alleged deficiencies were not the result of strategy. 277 Kan. at 644.

Here, however, we only have the State's speculation that an affirmative decision was made not to amend the motion and the decision was made after an investigation of law and facts. The State's speculation cannot serve as evidence, however, and nothing in the record establishes that 60-1507 counsel made a strategic decision. Hence, we cannot reach the conclusion that Mundy's 60-1507 counsel provided effective assistance.

On the other hand, we are unable to do as Mundy suggests—that is, we are unable to conclude that the record conclusively shows ineffective assistance of counsel. In making the suggestion we can determine that counsel was ineffective, Mundy points out there are few Kansas cases that help explain what constitutes a minimal standard of effectiveness. One example of a determination of minimal effectiveness can be found in *Brown* in which this court discussed multiple failures of 60-1507 counsel: He "failed to notify his client of his appointment and of the hearing" and "failed to notify his client of the denial of the 1507 motion and of [his client's] right to appeal by certain deadlines." Under those circumstances, this court held that the failure to advise a client of the right to appeal "cannot even meet the most minimal of standards," and thus the client should have been given permission to file an out-of-time appeal. 278 Kan. at 484. Here, although

22

Mundy's 60-1507 counsel did very little, at least a possibility exists that counsel's actions may have resulted from strategic decisions.

Mundy turns to out-of-state cases in an attempt to demonstrate that her 60-1507 counsel's conduct in this case was ineffective assistance as a matter of law or constituted structural error. See, e.g., *People v. Turner*, 187 Ill. 2d 406, 719 N.E.2d 725 (1999) (discussing a rule requiring habeas counsel to make "'any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions'"); *Lado v. State*, 804 N.W.2d 248, 249 (Iowa 2011) (counsel engaged in minimal activity, which constituted "structural error that constructively denied [the prisoner] the right to counsel and rendered the postconviction relief proceeding inherently unreliable"); *State v. Hicks*, 411 N.J. Super. 370, 377, 986 A.2d 690 (2010) (without certification from habeas counsel that a pro se filing is sufficient and no further elaboration required, courts "must presume that counsel did not make a meaningful effort to comply" with the rules for postconviction relief counsel).

The rules upon which these out-of-state decisions rely are simply not present in Kansas' rules for 60-1507 counsel. *Robertson* plainly held a 60-1507 movant must show counsel's performance was ineffective and must also "show[] . . . legal prejudice . . . when the performance of statutorily provided counsel on a K.S.A. 60-1507 motion is questioned." 288 Kan. at 232. Further, these cases do not reflect *Robertson*'s acknowledgment that pursuing relief for a 60-1507 client could "require[] counsel to stand silent or merely to submit the case on the written arguments of that client." 288 Kan. at 229. In other words, Mundy must show actual prejudice and cannot rely on a claim of structural error.

Ultimately, it is not clear from the record whether Mundy's 60-1507 counsel's minimal activity is the strategic, thoughtful choice envisioned by *Robertson* or a

23

complete failure to represent his client. We thus cannot consider the matter for the first time on appeal. See *Robertson*, 288 Kan. at 227-28 ("[A]s long as the record is sufficient or the claim clearly without merit, an appellate court may consider the quality of the assistance provided by K.S.A. 60-1507 counsel for the first time on appeal.").

3.3.    *We decline to sua sponte order a remand for a* Van Cleave-*type hearing.*

As we have discussed, if an ineffective assistance of counsel claim raised for the first time on appeal cannot be resolved on the record, we may order a remand for the district court to conduct a hearing. See *Van Cleave*, 239 Kan. at 120-21; see also *Robertson*, 288 Kan. at 228. Here, a *Van Cleave* hearing would probably have been helpful in evaluating Mundy's claims against her 60-1507 counsel.

Nevertheless, as pointed out by the State below, Mundy did not actually request a *Van Cleave* hearing before the Court of Appeals and has still not done so in her petition. At oral argument, Mundy's appellate counsel explained that she did not request remand because she was not optimistic a *Van Cleave* remand would be granted.

Counsel's failure to request a remand leaves us with no assurance that counsel complied with the requirements the *Van Cleave* court imposed on counsel. In all but the most exceptional cases an advocate must perform some sort of independent inquiry and investigation, apart from reading the record, before requesting remand. *Van Cleave*, 239 Kan. at 120-21. We cautioned that "it is incumbent upon appellant's counsel to do more than read the record and then determine that he or she would have handled things differently." 239 Kan. at 120. This means that, "[e]xcept in the most unusual cases, to assert a claim of ineffective assistance of counsel without any independent inquiry and investigation apart from reading the record is questionable to say the least." 239 Kan. at 120-21.

24

Given those instructions and guidance, which the *Van Cleave* court referred to as its "solemn caveat," we decline to remand a case for a *Van Cleave* hearing that has not been requested by an appellant. *Van Cleave*, 239 Kan. at 120. We recognize we have not uniformly enforced the requirements discussed in *Van Cleave* and have recognized that an appellate court may issue a *Van Cleave* remand sua sponte. See *Rowland v. State*, 289 Kan. 1076, 1084, 219 P.3d 1212 (2009). But in this case, the State has cited to the requirements and noted Mundy's failure to comply and subsequently Mundy's counsel indicated she had made a decision not to seek a remand. Under those circumstances, we agree with the State that a *Van Cleave* remand would be inappropriate, and we decline to sua sponte order such a remand in this case.

In conclusion, the record does not resolve for us whether 60-1507 counsel offered ineffective assistance. We will not order a remand for a hearing, and thus we do not consider Mundy's claim of ineffective assistance of 60-1507 counsel any further. See *Robertson*, 288 Kan. at 228.

4. *The district court's procedure did not run afoul of the* Lujan *methods for adjudicating a 60-1507 motion.*

Having left behind Mundy's argument about her 60-1507 counsel, we turn to her last two remaining issues: Did the district court err in handling, and then summarily dismissing, her 60-1507 motion?

We first address Mundy's contention that the district court's process violated our decision in *Lujan*. Preliminarily, we disagree with the Court of Appeals' conclusion that Mundy had abandoned or inadequately briefed her *Lujan* argument: We find it was sufficiently developed in her appellate brief and in her petition for review, and so we discuss its merits. See *Mundy*, 2015 WL 5458546, at *5.

25

The process to be followed in considering a K.S.A. 2016 Supp. 60-1507 motion is set out in subsection (b) of the statute. It begins by stating:

"Unless the [60-1507] motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the county attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusion of law with respect thereto." K.S.A. 2016 Supp. 60-1507(b).

Kansas Supreme Court Rule 183 (2017 Kan. S. Ct. R. 222) provides some additional directions. Of relevance here, it provides that "[i]f a motion to vacate, set aside, or correct a sentence presents a substantial question of law or triable issue of fact, the court must appoint counsel to represent an indigent movant." Supreme Court Rule 183(i) (2017 Kan. S. Ct. R 224); see K.S.A. 22-4506(b) ("If the court finds that the petition or motion presents substantial questions of law or triable issues of fact and if the petitioner or movant has been or is thereafter determined to be an indigent person . . . the court shall appoint counsel."). Additionally, "[a] sentencing court may determine whether a claim is substantial before granting an evidentiary hearing and requiring the movant to be present." Supreme Court Rule 183(h) (2017 Kan. S. Ct. R. 224); see also Supreme Court Rule 183(f) (echoing statutory language of K.S.A. 60-1507[b]).

Mundy's arguments require us to interpret K.S.A. 2016 Supp. 60-1507 and Kansas Supreme Court Rule 183. As we have previously noted, issues of statutory construction present an issue of law subject to unlimited review. *Lujan*, 270 Kan. at 166. The same standard applies when we interpret and apply a court rule. *Kansas Judicial Review v. Stout*, 287 Kan. 450, 460, 196 P.3d 1162 (2008).

26

In construing 60-1057 in *Lujan*, we recognized "the cases and law examined posit three avenues of approach for the district court faced with a K.S.A. 60-1507 motion":

"First, it may determine that the motion, files, and records of the case conclusively show that the petitioner is entitled to no relief, in which case it will summarily deny the petitioner's motion. Second, the court may determine from the motion, files, and record that a substantial issue or issues are presented, requiring a full evidentiary hearing with the presence of the petitioner. Third, the court may determine that a potentially substantial issue or issues of fact are raised in the motion, supported by the files and record, and hold a preliminary hearing after appointment of counsel to determine whether in fact the issues in the motion are substantial. In the event the court determines that the issue or issues are not substantial, the court may move to a final decision without the presence of the petitioner. If the issue or issues are substantial, involving events in which the petitioner participated, the court must proceed with a hearing involving the presence of the petitioner." *Lujan*, 270 Kan. at 170-71.

Mundy contends that the procedure used by the district court in her case did not fit within any of the *Lujan* avenues:  The district court appointed an attorney and scheduled a nonevidentiary hearing (the third avenue). These actions, according to Mundy, imply a finding that Mundy's motion presented at least a potentially substantial issue of law or triable issues of fact. Yet the district court summarily denied her motion (the first avenue).

In Mundy's view, if counsel has been appointed, a preliminary hearing scheduled, or both actions have been taken, a district court must hold a hearing and cannot summarily deny a 60-1507 motion. But the plain language of 60-1507(b) and Supreme Court Rule 183(f) does not require this all-or-nothing approach. Rather, the condition that triggers the evidentiary hearing requirement in 60-1507 is a district court's determination that a 60-1507 motion poses substantial issues of law or fact. See *Lujan*, 270 Kan. at 170 ("The above cases interpreting the provisions of K.S.A. 60-1507 and Supreme Court Rule

27

183[h] require a full evidentiary hearing with the presence of the petitioner only in those cases where substantial issues of fact exist as to events in which the petitioner participated.").

The appointment of counsel or the scheduling of a preliminary hearing, both of which are options contemplated by the statute, are methods to investigate or adjudicate *potential* substantial issues of law or fact. See K.S.A. 2016 Supp. 60-1507(b) ("Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon . . . ."); Supreme Court Rule 183(h) (2017 Kan. S. Ct. R. 224) ("A sentencing court *may* determine whether a claim is substantial before granting an evidentiary hearing."); *Lujan*, 270 Kan. at 170-71 ("K.S.A. 60-1507 and Supreme Court Rule 183[h] require a full evidentiary hearing with the presence of the petitioner only in those cases where substantial issues of fact exist."; "Third, the court *may* determine that a *potentially* substantial issue or issues of fact are raised in the motion.").

Nothing in *Lujan* prevents a district court from concluding without a hearing— even after counsel has been appointed—that the motions, files, and records of a case conclusively show that the movant is entitled to no relief. See *Lujan*, 270 Kan. at 170 ("Where the motion, files, and records of the case conclusively show that the petitioner is entitled to no relief, the trial court may summarily deny relief."). In fact, despite the three avenues outlined in *Lujan*, that case strongly hints that the district court may use its discretion to begin down one route before electing a final path. *Lujan*, 270 Kan. at 170 ("The trial court has discretion to ascertain whether the claim of the petitioner is substantial before granting a full evidentiary hearing and requiring the petitioner to be present."); see Supreme Court Rule 183(i) (stating the district court must appoint counsel for an indigent movant if the motion "presents a substantial question of law or triable issue of fact," but not prohibiting a discretionary appointment of counsel). And of course,

"[i]t is not uncommon for a trial court to change its rulings in the course of a [proceeding], and ordinarily error cannot be predicated thereon if the final result is correct." *Cox v. Gibson*, 125 Kan. 76, 78, 262 P. 1030 (1928).

In other words, a district court may use its discretion to begin down one avenue before electing a final route for handling a 60-1507 motion. Hence, a motion may be summarily denied even after counsel has been appointed and the motion has been set for hearing.

Nor has Mundy demonstrated the procedure used by the district court in this case implicates due process concerns. Mundy makes only a conclusory assertion that a non-*Lujan* procedure violates her due process rights; she does not cite to any controlling due process caselaw or explain the contours of the right at issue. Cf. *State v. Swafford*, 306 Kan. 537, Syl. ¶ 5, 394 P.3d 1188 (2017) ("Without running afoul of due process, a district court has the authority to summarily deny a K.S.A. 22-3504 motion to correct an illegal sentence without a hearing and may summarily assess the adequacy of its findings of fact and conclusions of law memorializing the summary denial without a hearing.").

Having concluded that the district court did not stray from *Lujan* in its proceedings, we are left with one final question: Was the actual decision reached through those proceedings—the summary denial of Mundy's 60-1507 motion—correct?

   5. *Summary denial of Mundy's 60-1507 motion was appropriate.*

When the district court summarily denies a 60-1507 motion, we "review de novo the motion, records, and files to determine whether they conclusively show that the movant is not entitled to relief." *Makthepharak v. State*, 298 Kan. 573, 577, 314 P.3d 876 (2013); see *Bellamy v. State*, 285 Kan. 346, 354, 172 P.3d 10 (2007) (explaining there is

no reason to defer to the district court's factual findings under this procedure "because an appellate court has the same access to the motion, records, and files as the district court").

Both the district court and this court liberally construe pro se pleadings. *State v. Andrews*, 228 Kan. 368, 370, 614 P.2d 447 (1980). Nevertheless, a pro se movant still bears the burden to allege facts sufficient to warrant a hearing on the motion, and "mere conclusions of the defendant or movant are not sufficient to raise a substantial issue of fact when no factual basis is alleged or appears from the record." *State v. Jackson*, 255 Kan. 455, 463, 874 P.2d 1138 (1994).

Here, Mundy's 60-1507 motion did not merit an evidentiary hearing and the district court did not err in summarily dismissing the motion. Mundy offers only conclusory statements and incomplete facts; she presents no evidentiary basis in support of her claims, and no such basis appears in the record. See *Swenson v. State*, 284 Kan. 931, 938, 169 P.3d 298 (2007). Even liberally construed, Mundy's motion did not entitle her to an evidentiary hearing. Her assertions are more than "inartfully pleaded," *Haines*, 404 U.S. at 520-21, and are simply conclusory.

As the district court concluded, the record does not support Mundy's assertion that trial counsel failed to subpoena witnesses, failed to interview certain witnesses, or declined to use some of Mundy's patients as witnesses. Trial counsel did not fail to do any pretrial investigation at all—nor does Mundy allege this complete failure. Instead, the record shows trial counsel called several witnesses at trial and thoroughly cross-examined many of the State's witnesses. This appears to be in keeping with trial counsel's strategy to paint the irregularities in Mundy's practice as bookkeeping errors made by a hardworking and dedicated therapist, as opposed to fraud—and we have repeatedly held

30

that trial strategy is the province of trial counsel. *State v. Rivera*, 277 Kan. 109, 117, 83 P.3d 169 (2004).

As to witnesses trial counsel did not call or interview, the court-approved form for 60-1507 motions asked Mundy to "[s]tate concisely . . . the facts which support each of the grounds . . . and the names and addresses of the witnesses or other evidence" she intended to rely on. Yet Mundy listed six witnesses, as well as "court records" and "personal records," but did not list any facts or indicate how the witnesses or testimony would support her claim.

In addition, the district court correctly concluded Mundy had made only "naked allegations" that trial counsel was ineffective by being preoccupied with another case, by giving work to a nonattorney within his office, or by refusing to return Mundy's retainer. Finally, Mundy provided nothing more than a conclusory allegation that an unidentified friend gave some unidentified sort of legal advice to trial counsel.

In summary, Mundy's conclusory statements were not sufficient to raise a substantial issue of fact on these matters. See *Jackson*, 255 Kan. 455, Syl. ¶ 5; *Sullivan v. State*, 222 Kan. 222, 223, 564 P.2d 455 (1977) ("It is well established that the mere conclusionary contention that a petitioner is entitled to relief, for which no factual basis appears in the record, is not sufficient to require an evidentiary hearing for post-conviction relief."). The court-approved form instructed her to state "the facts which support each of her grounds," but Mundy did not list any facts or indicate how her listed witnesses or testimony would support her claim. She listed witnesses, but there is no indication what issue those witnesses would have testified about or what they would have said. See *Swenson*, 284 Kan. at 937-38 (movant claimed counsel did not call a certain witness, but then identified the witness specifically and explained what she would have testified to; this claim raised a sufficient factual basis). Accordingly, Mundy's pro se

60-1507 motion, even liberally construed, did not entitle her to an evidentiary hearing or relief.

## CONCLUSION

We hold the Court of Appeals erred in declining to exercise its jurisdiction over Mundy's ineffective assistance of 60-1507 counsel claim. Nevertheless, we, too, decline to reach the issue because it was raised for the first time on appeal, it cannot be resolved from the record, and Mundy did not request a *Van Cleave* hearing. We affirm the Court of Appeals' conclusion that the district court proceedings did not violate *Lujan* or Mundy's due process rights, and we similarly affirm its decision to uphold the district court's summary denial of Mundy's 60-1507 motion.

Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.